## GOODALL CO. v. GREENSFELDER et al.

### No. 1785.

District Court, E. D. Missouri, E. D.

Nov. 6, 1942.

Murray, Sackhoff & Paddack, of Cincinnati, Ohio, and Kingsland, Rogers & Ezell, of St. Louis, Mo., for plaintiff.

Carr, Carr & Gravely and John D. Rippey, all of St. Louis, Mo., for defendants.

COLLET, District Judge.

1. Plaintiff is incorporated under the laws of the State of Maine, and has a principal place of business in Cincinnati, Ohio.

2. Defendants Edward Greensfelder is a resident of St. Louis, Missouri, and Mercantile-Commerce Bank and Trust Company is a corporation of Missouri, and has its principal place of business at St. Louis. They, as trustees, are the owners of the entire legal title to and under United States Letters Patent of Wilton Rubinstein No. 2,152,093 and No. 2,204,152. The Wilfold Company is the exclusive licensee under said Letters Patent.

3. Plaintiff made coats with collars like the description in the Giuseffi Patent No. 2,166,566, under which it has an exclusive license, and sold them to a retailer in the City of St. Louis. One of these coats is in evidence as plaintiff's Exhibit No. 1. Defendants' attorneys notified plaintiff's customer on or about April, 1941, and again on October 15, 1941, that its sales of said coats constituted an infringement of said Rubinstein Patents No. 2,152,093 and No. 2,204,152. Plaintiff notified said Edward Greensfelder on October 28, 1941, that it would assume the defense of any suit filed against its customer for said alleged infringement, and would enter its appearance and submit to the judgment of this court in such suit. Plaintiff's customer was notified again on December 31, 1941, that it was infringing said Rubinstein Patents, and to cease the sale of said coats and to render an account.

4. Plaintiff filed its bill for declaratory judgment on January 24, 1942, alleged that said Rubinstein Patents are invalid in view of prior United States Letters Patent, and that the claims of said Rubinstein Patents could not be construed to cover the collars of the coats sold by it to its said retailer.

5. Defendants filed an answer in which they admitted that plaintiff's coats did not infringe the Rubinstein Patent No. 2,152,093, and a counterclaim in which they alleged that said coats infringed the claims of the Rubinstein Patent No. 2,204,152.

6. The collars illustrated in Rubinstein No. 2,204,152 and the Margulies Patent No. 1,579,879, have in common a top or outer ply, an under or inner ply, a pair of interlining or stiffening members having a space left between their adjacent edges at the fold of the collar and unattached to each other, and a strip of fabric located adjacent to the spaced edges of the interlining or stiffening members and attached by stitching to said edges. The collar shown in Rubinstein differs from that shown in Margulies in that Rubinstein has a line of stitching connecting the flexible strip 5 to the inner ply and to the adjacent edges of the interlining and stitching connecting one of the edges of the interlining to the top or outer ply.

7. Whilst the application for Letters Patent of Rubinstein No. 2,204,152 was pending in the Patent Office, the Giuseffi Patent No. 2,166,566 issued, and the applicant Rubinstein then inserted in his application all of the three claims of said Giuseffi Patent, and demanded that an interference between said Giuseffi Patent and said Rubinstein application be declared. The Patent Office refused to declare said requested interference on the ground that the Giuseffi claims did not read into the Rubinstein disclosure, and the applicant then cancelled from his application said claims which he had copied from the Giuseffi Patent.

### Conclusions of Law.

I. The collar of the coat which plaintiff manufactured in accordance with the Giuseffi Patent No. 2,166,566, and exemplified by Plaintiff's Exhibit I, does not infringe the Rubinstein Patent No. 2,152,093.

II. If validity be accorded to the Rubinstein Patent No. 2,204,152, the claims thereof, in view of the disclosures in Margulies No. 1,579,879, would be limited to a construction wherein there are lines of stitching connecting the adjacent edges of the interlining pieces to the under ply and stitches connecting the edge of one of said interlining pieces to the top or outer ply.

III. The collar of the coat which plaintiff manufactured in accordance with the Giuseffi Patent No. 2,166,566, and exemplified by Plaintiff's Exhibit I, does not infringe the Rubinstein Patent No. 2,204,152, because both of the adjacent longitudinal edges of the interlining pieces are secured to the under ply and neither of said edges is attached to the top ply of said collar.

IV. Plaintiff is entitled to an award of the costs of this suit.

The following will serve to indicate the theory upon which the more formal conclusions filed herewith are based.

■ To one none too well versed in the art of building garments it would seem that the art exemplified by the Margulies patent, and possibly others, are perilously near substantial similarity to the art disclosed by Giuseffi's patent. It might well be that one with this Court's knowledge, or lack of it, would have concluded that no invention was represented by Giuseffi's disclosures and denied the issuance of the latter's patent. But the patent office issued the latter patent after full consideration of the prior art. Its judgment is entitled to consideration and deference. If it is not clearly erroneous it should be followed by the Courts. While the validity of Giuseffi's patent is not now an issue the action of the Patent Office in issuing that patent in the face of the prior art disclosed by Margulies and others must not be ignored unless clearly erroneous. The Court being unable and hence unwilling to say that the conclusion of the Patent Office was clearly erroneous in finding sufficient difference between Giuseffi's disclosures and the teaching of the prior art to justify the issuance of Giuseffi's patent, the result is that such difference being sufficient to prevent invalidity, in the opinion of the Patent Office, on the ground of noninvention, would be sufficient to avoid infringement, unless, of course, the invention and novelty of Giuseffi's disclosures were so broad that they could be said to include as incidentals, the teachings of the prior art. The latter exception cannot be true. Hence, the premise that the distinction or difference between the art disclosed by the Giuseffi patent and the prior art is sufficient to avoid infringement.

■ When comparison is made between the Giuseffi and Rubinstein disclosures the same doubts may arise concerning the adequacy of the distinction between them as were heretofore expressed concerning the distinction between Giuseffi disclosures and those taught by the prior art. But the principles noted, that consideration and deference will be accorded to the judgment of the Patent Office, are equally applicable to the determination of the sufficiency of the difference between the art represented by Giuseffi and Rubinstein to sustain validity of the latter and infringement between both. Since the determination of the validity of the Rubinstein patent will not be necessary if infringement is not shown, consideration will first be directed to the latter.

■ Examination of the Giuseffi and Rubinstein disclosures compels the conclusion that the art disclosed by the Rubinstein patent is not so broad and revolutionary that it may be held to dominate the disclosures of Giuseffi's patent on the theory that the latter are mere incidents to a new and broader art first discovered by Rubinstein. Hence, the question is narrowed to the validity of Rubinstein's patent in the light of the prior art and, in the event of validity, infringement between the products created under each.

Assuming validity for the present for the reason heretofore noted, and considering infringement alone, the conclusion seems inescapable that the same overall similarity between the disclosures of these patents which prompted the conclusion that those of Rubinstein did not dominate the prior art, would make it rather doubtful whether sufficient distinction exists between the products made under these patents to avoid infringement. The Patent Office obviously thought there was sufficient distinction between the methods portrayed, otherwise the Rubinstein patent would not have been issued subsequent to the issuance of Giuseffi's or interference would have been allowed as requested by Rubinstein. I am unable and, therefore, unwilling to say that the experts were clearly wrong in their judgment. Giving consideration to that judgment along with all the other facts in evidence leads to the conclusion that a finding of infringement is not warranted.